**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**AARON SMITH,**

**Plaintiff,**

**vs.**

**LT. EOVALDI,
SGT. ANTHONY,
C/O MALLORY,
SGT. BEBOUT,
C/O NEGAL,
SGT. HENNRICH,
C/O EASTON,
C/O BROCK,
SGT. HARRIS,
JOHN DOE, and
C/O BENNETT,**

**Defendants.**

**Case No. 3:15-cv-00434-SMY**

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Aaron Smith is currently incarcerated at the Chester Mental Health Center in Chester, Illinois, but was previously incarcerated at the Menard Correctional Center in Menard, Illinois. (Doc. 6 at 1, 7.) Proceeding *pro se*, Smith has filed a civil rights action under 42 U.S.C. § 1983 against several officers at Menard, alleging that some officers used excessive force against him after an outburst in November 2013 and others exposed him to inhumane conditions in his cell after the attack. (*Id.* at 7-10.) Smith seeks monetary damages. (*Id.* at 11.)

This matter is now before the Court for a review of the complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During the § 1915A review, the court "shall identify cognizable claims or dismiss the complaint, or any

portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune."

**Background**

Smith is currently housed at the Chester Mental Health Center in Chester, Illinois, but the events leading up to this case occurred at the Menard Correctional Center. (Doc. 6 at 7.) On November 13, 2013, Smith had a "negative outburst" and was "maced" by Lieutenant Eovaldi and removed from his cell by Corrections Officer Bennett, Corrections Officer Mallory, and Sergeant Bebout. (*Id.*) He was taken to the North 2 Infirmary Unit bullpen, where he was forced to lie on the floor. (*Id.*) While he was on the floor, Bennett, Mallory, Bebout, and Eovaldi allegedly kicked and punched Smith for ten minutes, causing Smith to defecate upon himself. (*Id.*) After this incident, Smith was stripped of his prison clothes and "inadequately seen" by "medical." (*Id.*) Smith also spoke with Sergeant Anthony, an internal affairs officer with the prison, who Smith says did not afford him a "proper investigation." (*Id.*)

Shortly after Anthony left Smith's company, Smith was again moved to the infirmary bullpen. (*Id.* at 8.) Bebout was there, too, and he again punched and kicked Smith for five minutes. (*Id.*) The incident stopped shortly before Dr. Delong, a mental health specialist with the prison, arrived at the infirmary. (*Id.*) Dr. Delong was told (presumably by Bebout) that Smith rubbed the fecal matter upon his own posterior during his outburst, which Smith says was a lie – the fecal matter was spread during the attack. (*Id.*) Dr. Delong noted in the medical record that Smith had spread fecal matter on himself, and then left the infirmary. (*Id.*)

After the visit with Dr. Delong, Smith was moved from the infirmary to a cell by unspecified officers. (*Id.*) The unspecified officers did not allow Smith to clean the fecal matter off of himself or put on clothes for the transfer, and kept Smith shackled and handcuffed. (*Id.*)

Smith was forced to walk backwards down a flight of stairs in this condition, and was also forced down Gallery 4 and to his cell with his face to his knees and his arms twisted upward. (*Id.*) The cell that he was placed in had no mattress and no running water, at least initially. (*See id.*)

After Smith arrived at his cell, he was denied food for "many days" by several officers, including Brock and Easton. (*Id.* at 9.) Smith remained in that condition until approximately November 21, 2013, when Dr. Delong put Smith on watch to assist him in being fed. (*Id.*) Despite this change in status, two other officers – Harris and an unknown Doe officer – did not allow Smith to shower or clean the fecal matter off of himself from November 2013 to February 2014. (*Id.*) During this time, Smith was also denied hygiene products, warm clothing, and other property by Corrections Officer Hennrich and Corrections Officer Negal. (*Id.*)

Sometime after these events occurred, Smith was transferred from Menard to the Chester Mental Health Center. (*Id.* at 1.) After his transfer, he filed a § 1983 complaint. (Doc. 1.) That complaint was missing numerous pages, so the Court directed Smith to re-send the complaint. (Doc. 3.) Smith sent what appeared to be a newer version of his complaint on May 20, 2015, which the Court characterized as an amended complaint. (Doc. 6.)

**Discussion**

The Court begins its § 1915A review with a note about the parties at issue in this case. Throughout his amended complaint, Smith refers to the conduct of some individuals not named in his caption or his defendant list: he says that he was "inadequately seen" by "medical" after the first attack, that Dr. Delong did nothing but make a note in Smith's medical record when she visited him after the second attack, that unspecified officers moved Smith to his cell in an improper fashion without giving Smith an opportunity to clean himself before the transfer, that the unspecified officers who moved Smith to his cell removed the mattress in that cell and shut

off the water to that cell, and that "other officers" failed to feed Smith after the attack. Given that these individuals were not designated as parties in his defendant list but another John Doe was, it seems unlikely that Smith wished to raise discrete claims against them. Regardless, because these parties are not listed in the caption by name or by Doe designation, they will not be treated as defendants in this case, and any claims against them should be considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption").

Turning to Smith's complaint, the Court finds it appropriate to divide the claims in the complaint into the following counts, as shown below. The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court.

**COUNT 1:** Bennett, Mallory, Bebout, and Eovaldi engaged in excessive force against Smith before and after moving him out of his cell on November 13, 2013, in violation of the Eighth Amendment to the United States Constitution.

**COUNT 2:** Anthony performed an improper investigation into Smith's grievance related to the initial attack, in violation of Smith's rights.

**COUNT 3:** Bebout engaged in excessive force against Smith a second time during his placement in the infirmary on November 13, 2013, in violation of the Eighth Amendment to the United States Constitution.

**COUNT 4:** Brock, Easton, Harris, Doe, Hennrich, and Negal exposed Smith to inhumane conditions after he was transferred to a cell in the prison, in violation of the Eighth Amendment to the United States Constitution.

Smith's complaint focuses primarily on excessive force by Bennett, Mallory, Bebout, and Eovaldi on November 13, 2013 (**Count 1**) and again by Bebout later that day (**Count 3**), so the Court will start with those claims. To put forth an excessive force claim, a prisoner must show that an assault occurred and that it was "carried out maliciously and sadistically, rather than as part of a good-faith effort to maintain or restore discipline." *Wilkins v. Gaddy*, 559 U.S. 34, 37-

38 (2010).  Critically, not "every malevolent touch by a prison guard gives rise to a federal cause of action" – an inmate who complains of a "'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim."  *Id.* (*quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).  Here, Smith has alleged prolonged attacks in his claim against Bennett, Mallory, Bebout, and Eovaldi and another attack in his claim against Bebout, and these allegations put forth arguable excessive force claims.  Accordingly, **Count 1** will proceed past screening as to Bennett, Mallory, Bebout, and Eovaldi, and **Count 3** will proceed as to Bebout.

Smith also names Sergeant Anthony in his case, saying that Anthony visited him after the first attack but did not afford him a proper investigation (**Count 2**).  Smith should know that § 1983 imposes liability for constitutional violations, and a failure by a prison official to properly investigate an attack or respond to a prisoner's grievance – on its own – does not violate the United States Constitution.  *See, e.g., George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."); *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."); *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (prisoner had no claim for "failure to investigate" a grievance because there was no "protected liberty interest" in having the grievance "resolved to his satisfaction").  To be sure, a prisoner might state a claim against an internal affairs officer if the prisoner told the officer of an ongoing threat or ongoing conditions and the officer failed to do anything about it.  *Glick v. Walker*, 272 F. App'x 514, 519 (7th Cir. 2008).  But Smith does not allege anything like that here – he only claims that the officer did not properly investigate.  Accordingly, **Count 2** must be dismissed without prejudice.

Finally, Smith alleges that several officers exposed him to improper conditions at various points between November 13, 2013 and February 7, 2014 (**Count 4**). To put forth a conditions of confinement claim, a plaintiff must allege conditions that are "sufficiently serious," and must also allege that the named defendants were "deliberately indifferent to those conditions." *Rice ex rel. Rice v. Correctional Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012). Applying these elements here, Smith has made out an arguable claim against Brock and Easton, who allegedly did not feed him for several days after the alleged attack. *See Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999) (denial of food, while not a "*per se* objective violation," could violate the Eighth Amendment depending upon the circumstances). He has also made out an arguable claim against Harris and Doe, who purportedly did not allow Smith to shower or otherwise clean off fecal matter for several months. *See Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013) (allegations of unhygienic conditions, "combined with the jail's failure to provide detainees with a way to clean for themselves with running water or other supplies, state[d] a claim for relief"). Finally, Smith has made out an arguable claim against Hennrich and Negal, who allegedly denied him hygiene products and warm clothing during the winter months. *See id.* (allegation that jail did not provide "adequate bedding and protection from cold" put forth a claim). Accordingly, **Count 4** may proceed as to Brock, Easton, Harris, Doe, Hennrich, and Negal.[1]

[1] Smith also alleged that, after unspecified officers moved him from the infirmary to his cell, they removed his mattress and turned his water off for an unknown amount of time. As the Court already said above, those officers were not listed, by Doe designation or name, in the caption, so any claim against them is dismissed without prejudice. Further, Smith does not say how long those conditions persisted, let alone anything about how Brock, Easton, Harris, Doe, Hennrich, and Negal were indifferent to them. Accordingly, any claim tied to this conduct against these officers must be dismissed without prejudice. *See, e.g.*, *Bush v. Rendell*, 533 F. App'x 141, 144 (3d Cir. 2013) (affirming dismissal of conditions claim against several defendants, as it was not alleged that "any of the named defendants" had involvement in "creating or maintaining" the conditions); *Lucien v. Bierman*, 51 F.3d 275 (7th Cir. 1995) (affirming dismissal because there was "no personal involvement on the part of the defendants" in the "conditions of confinement").

One closing note concerning the John Doe defendant: this officer must be identified with particularity before service of the complaint can occur on him. Where a prisoner's complaint states specific allegations describing the conduct of unknown prison staff sufficient to raise a constitutional claim against them, the prisoner should have the opportunity to engage in limited discovery in order to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, guidelines for discovery aimed at identifying John Doe will be set by the magistrate judge. Once John Doe is identified, Smith shall file a motion to substitute the named individual with the John Doe designate.

**Disposition**

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 1** shall **PROCEED** against **BENNETT**, **MALLORY**, **BEBOUT**, and **EOVALDI**.

**IT IS FURTHER ORDERED** that **COUNT 2** is **DISMISSED without prejudice**. Because there are no further claims against him, **ANTHONY** is **DISMISSED** from this case.

**IT IS FURTHER ORDERED** that, for the reasons stated, **COUNT 3** shall **PROCEED** against **BEBOUT**.

**IT IS FURTHER ORDERED** that, for the reasons stated, **COUNT 4** shall **PROCEED** against **BROCK**, **EASTON**, **HARRIS**, **DOE**, **HENNRICH**, and **NEGAL**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **BENNETT**, **MALLORY**, **BEBOUT**, **EOVALDI, BROCK**, **EASTON**, **HARRIS**, **HENNRICH**, and **NEGAL**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons

(Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the John Doe defendant until such time as Plaintiff has identified him by name in a properly filed amended complaint.  It is Plaintiff's responsibility to provide the Court with the names and service addresses for this individual.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Philip M. Frazier for further pre-trial proceedings.

**IT IS FURTHER ORDERED** that Plaintiff's pending Motion for Recruitment of Counsel (Doc. 3) is **REFERRED** to Magistrate Judge Philip M. Frazier for consideration.

Further, this entire matter is **REFERRED** to Magistrate Judge Philip M. Frazier for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under § 1915 for leave to commence this action without being required to prepay fees and costs, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

      **IT IS SO ORDERED.**

      **DATED: July 6, 2015**

      s/ STACI M. YANDLE  
      **UNITED STATES DISTRICT JUDGE**